Robert Bruce Snow Hernando County Attorney Brooksville
QUESTION:
May a county legally divest itself of ownership and control of certain dedicated streets and roads in a subdivision, and transfer to a homeowners' association the right to exercise ownership and control of, and to maintain, the streets and roads?
SUMMARY:
A county is statutorily authorized in the sound discretion of the board of county commissioners to close and vacate dedicated roads and streets designated on a recorded subdivision plat. Such authority must be lawfully exercised in the interest of the general public welfare and may not invade or violate individual property rights. The county is not authorized, however, and cannot in any manner legally convey or transfer the ownership and control of the vacated roads or streets to a homeowners' association as such, but upon lawful vacation thereof the abutting fee owners hold the title in fee simple to the vacated roadways or streets to the center thereof unburdened and unencumbered by the public's prior easement to use such roadways or streets for travel. The county would not be liable to any abutting fee owners as a result of closing or vacating such roadways or streets unless an abutting owner is thereby deprived of and suffers a consequent loss of access to his property. An abutting fee owner would also have a private or implied easement and cause of action to enforce such easement for access or egress or travel as against the homeowners' association or other abutting owners seeking to obstruct such access and use of and travel upon the vacated, now private, roads and streets.
According to your letter, several miles of platted roads or streets in a large subdivision in Hernando County were dedicated to the public and accepted by the county through its approval for recording of the subdivision plat and its acceptance of the dedication of the streets and roads contained thereon. A property owners' association representing the majority, though not all, of the residents and property owners of the subdivision has requested the county to relinquish its control, ownership, and maintenance of the dedicated streets and roads and turn over this control, ownership, and maintenance to the association in order that it might not only maintain such streets and roads but also restrict access to and within the subdivision to its residents and property owners. As attorney for the county, you ask whether the board of county commissioners may legally transfer its ownership and control of the streets and roads to the association and, if it does so, whether it will be subject to any liability as a consequence of its actions.
Initially, it is necessary to consider the elements and effect of a dedication. A dedication is simply the donating or appropriating of one's own land for use by the public. That is, the owner of the dedicated property is precluded from using it in any way inconsistent with the public's use thereof. There are two essential requisites to a finding of a dedication of property to the public. There must first be a clearly manifested intent by the owner of property to dedicate it to public use. Second, the public, through its authorized agents or officials, must clearly manifest its intent to accept the dedication. City of Miami v. Florida East Coast Railway Co., 84 So. 726 (Fla. 1920); Roe v. Kendrick, 200 So. 394 (Fla. 1941). An offer of dedication to the public an be accomplished by making and recording a plat and selling lots with reference thereto, the method apparently employed in the instant situation. See, e.g., Florida East Coast Railway Co. v. Worley, 38 So. 618 (Fla. 1905); Miami Beach v. Undercliff Realty and Investment Co., 21 So.2d 783 (Fla. 1945);and see s. 177.081, F. S. It appears from your letter that the dedication of roads and streets in the subdivision in question was properly accepted by the appropriate county officials and I, therefore, assume that a proper dedication has taken place.
The effect of a dedication does not operate as a grant of the dedicated property but rather by way of an estoppel in pais. That is, the legal title to the property remains in the grantor (or his vendees) while the public takes the beneficial use of the property. Effectively, then, the fee remains in the grantor (or his grantees) while the public acquires only a right of easement in trust, so long as the dedicated land is used for the intended purpose of the dedication. The grantor (or grantees — abutting lot owners) is precluded from using the property in any way inconsistent with the public use. Burkhart v. City of Fort Lauderdale, 156 So.2d 752 (2 D.C.A. Fla., 1963), decision quashed168 So.2d 65 (Fla. 1964); Florida State Turnpike Authority v. Anhoco Corporation, 107 So.2d 51 (3 D.C.A. Fla., 1959); Robbins v. White, 42 So. 841 (Fla. 1907). Absent a contrary showing, not madeevident here, the legal title of the grantor-subdivider in properly dedicated property passes to the grantees of lots sold in reference to a plat, which lots abut the dedicated streets. Their title extends to the center of the streets subject to the public easement. Walker v. Pollack, 74 So.2d 886 (Fla. 1954); Smith v. Horn, 70 So. 435 (Fla. 1915); New Fort Pierce Hotel Co. v. Phoenix Tax Title Corp., 171 So. 525 (Fla. 1936); United States v. 16.33 Acres of Land in County of Dade, 342 So.2d 476, 480 (Fla. 1977);cf., Emerald Equities v. Hutton, 357 So.2d 1071 (2 D.C.A. Fla., 1978), wherein the court held that, when a single owner conveys to the county the title to or an easement in a roadway which is later abandoned by the county, that owner or his successors takes back or retains title to all the abandoned property unless the owner is a subdivider who has later *4438 conveyed lots (and his interest in the abutting road) which abut the dedicated roadway to separate owners without specifically reserving any reversionary interest in the roadway. In such a case, the general rule prevails that the abutting owners on each side of the abandoned or vacated road become the fee owners out to the center line. See also ss.177.085(2) and 336.12, F. S. These purchasers acquire their title, however, subject to the easement of the public in the dedicated property. Smith, supra; New Ft. Pierce Hotel Co., supra; Gainesville v. Thomas, 54 So. 780 (Fla. 1911).
Your inquiry does not state that the dedicator or subdivider reserved any reversionary interest or rights in the streets and roads in the plat in question. I assume, therefore, for the purposes of this opinion, that no such rights exist in or under the plat. However, if such plat was made and recorded in the public records before July 1, 1972, and if no action has since been brought to establish or enforce any such reversionary rights, they are now barred and unenforceable by operation of s.177.085(2), F. S. See also 16.33 Acres of Land in County of Dade,supra, and Emerald Equities, supra.
It seems evident that the governing body of Hernando County does not `own' the streets and roads in the subject subdivision which were dedicated for public use. The public has an easement to use the streets and roads, but there is no legal title to the property vested in the county which it can convey or transfer to the homeowners' association. Nevertheless, counties in Florida have the statutory authority to close and vacate any county streets, roads, alleyways, or other places used for travel. Section336.09(1), F. S., provides:
 (1) The commissioners, with respect to property under their control may in their own discretion, and of their own motion, or upon the request of any agency of the state, or of the federal government, or upon petition of any person or persons, are hereby authorized and empowered to:
 (a) Vacate, abandon, discontinue and close any existing public or private street, alleyway, road, highway, or other place used for travel, or any portion thereof, other than a state or federal highway, and to renounce and disclaim any right of the county and the public in and to any land in connection therewith;
 (b) Renounce and disclaim any right of the county and the public in and to any land, or interest therein, acquired by purchase, gift, devise, dedication or prescription for street, alleyway, road or highway purposes, other than lands acquired for state and federal highway; and
 (c) Renounce and disclaim any right of the county and the public in and to land, other than land constituting, or acquired for, a state or federal highway, delineated on any recorded map or plat as a street, alleyway, road or highway. (Emphasis supplied.)
Upon termination of the easement acquired by the public in the dedicated property, s. 336.12, F. S., provides that the title of the fee owners in the property shall be freed and released therefrom.
 The act of any commissioners in closing or abandoning any such road, or in renouncing or disclaiming any rights in any land delineated on any recorded map as a road, shall abrogate the easement theretofore owned, held, claimed or used by or an behalf of the public and the title of fee owners shall be freed and released therefrom . . . . (Emphasis supplied.)
Hence, upon the lawful, statutorily prescribed vacation of the public's easement, the title to the fee of the dedicator or of his successors, or of the abutting lot owners, is freed of and released from the easement; therefore, those property owners who own land abutting the street or road would, upon surrender, have unencumbered fee title to the center of the right-of-way. Cf., Emerald Equities, Inc., supra.
Applying the foregoing principles and statutes to the instant case, I conclude that the board of county commissioners has statutory authority to close and vacate the dedicated and platted roads and streets in question in accordance with the statutes, but may not by conveyance by deed or any other instrument of conveyance transfer the ownership and control thereof to the association. The title in fee simple to the vacated road beds or rights-of-way to the center thereof would remain, unburdened orunencumbered, in the abutting fee owners who presumably could, if they so chose, convey or transfer a portion of their property to the homeowners' association (assuming it is so organized and legally capacitated to hold the legal title thereto) for roadway purposes and control and maintenance thereof. As a caveat, it should be noted that if the general public is using the roads and streets in question (including public service vehicles such as garbage trucks, police, fire, or emergency vehicles), then the county should not close or vacate the roads or streets in question if such vacation would be injurious to the public welfare or violate individual property rights. It has been noted: `. . . [T]he power to vacate streets cannot be exercised in an arbitrary manner, without regard to the interest and convenience of the public or individual rights.' McQuillin Municipal Corporations s. 30.186a. Hence, absent a determination by the county commission that the general public welfare would benefit from vacation, it should not be accomplished, and in any event, the roads or streets can be vacated only in accordance with the statute as discussed above and title thereto cannot be legally conveyed or transferred to the homeowners' association.
You also ask whether the action of the county in closing and vacating the roads and streets in the subdivision would subject it to liability in inverse condemnation based upon a loss of access to the abutting lot owners. As a practical matter, the facts delineated in your inquiry suggest that the homeowners' association does not propose to restrict the access of any of the resident or nonresident abutting fee owners to any of the platted streets or roads or any property within the subdivision. Therefore, no cause of action in inverse condemnation could arisein such factual situation. However, a right of access to one's own property is a property right. Hence, an abutting fee owner may be entitled to compensation from a public body when it closes or vacates a public street for the consequent loss of such access on the theory that a property right has been taken without compensation. See, e.g., Pinellas County v. Austin, 323 So.2d 6 (2 D.C.A. Fla., 1975).
An abutting owner, it should also be noted, would, upon vacation of the property, have a cause of action to enforce his right of access or private easement for roadway purposes as against the homeowners' association or other abutting owners who may obstruct access or travel upon any of the vacated roads. Such private (implied) easement would arise by virtue of conveyances and sales made with reference to the recorded plat which creates a private right to have the space marked on the plat as streets and roads remain open for ingress and egress and the uses indicated by the designation. As stated by the Florida Supreme Court in City of Miami v. Florida East Coast Ry. Co., 84 So.2d 726, 729 (Fla. 1920):
 The platting of land and the sale of lots pursuant thereto creates as between the grantor and the purchaser of the lots a private right to have the space marked upon the plat as streets, alleys, parks, etc., remain open for ingress and egress and the uses indicated by the designation. (Emphasis supplied.)
See also McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1956); Burnham v. Davis Islands, Inc., 87 So.2d 97 (Fla. 1956); Reiger v. Anchor Post Products, Inc., 210 So.2d 283 (3 D.C.A. Fla., 1968), holding that the rights of abutting or adjacent purchasers depend upon principles of law applicable to private property rather than public dedication since these rights depend upon a `private easement implied from sale with reference to a plat showing streets [etc.]' rather than upon any dedication to the public generally. 87 So.2d at 100. And see, Monell v. Golfview Road Association, 359 So.2d 2 (4 D.C.A. Fla., 1978), wherein the court held that the rights of common owners of an easement on and for the purposes of a private road are limited to the purpose for which the easement was established and may not be exercised in derogation of the rights of other common owners. Hence, the court granted an injunction requiring a homeowners' association to remove speedbumps it had placed on the roadway which substantially invaded and violated the right of a particular homeowner to use his easement on the private road to get to his house and property.Cf., Emerald Equities, Inc., supra; 16.33 Acres of Land, supra; and AGO's 078-88 and 078-63.
Prepared by: Frank A. Vickory, Assistant Attorney General